IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC RICHARDS,<br><br>    Plaintiff,<br><br>vs.<br><br>BRACEBRIDGE CAPITAL LLC,<br>JAMES DIBIASE, and NANCY<br>ZIMMERMAN,<br><br>    Defendants. | Civil Action No. 05-10002-RCL |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS**

Defendants Bracebridge Capital LLC ("Bracebridge"), James DiBiase, and Nancy Zimmerman respectfully submit this memorandum in support of their motion to dismiss all claims against Ms. Zimmerman, and to dismiss the federal-law claims asserted against Mr. DiBiase.

**BACKGROUND[1]**

Plaintiff Eric Richards was employed by Bracebridge for less than a year, between August 2002 and February 2003. Complaint ¶5. Bracebridge is an investment company, and Mr. Richards was hired as an analyst. See id.

In November 2002, Mr. Richards had an acute episode of an apparently chronic back condition. He requested and Bracebridge provided certain accommodations because of the injury. See id. ¶¶5, 7, 8. In February, 2003,

---

[1] As required by Fed. R. Civ. P. 12(b)(6), defendants set forth the facts as alleged in the Complaint. Defendants of course do not concede the accuracy of those allegations, but plaintiff cannot pursue his claims against Ms. Zimmerman as a matter of law, even if the allegations of the Complaint are accepted as true for these purposes.

Bracebridge terminated Mr. Richards' employment. He contends (and Bracebridge denies) that he was terminated because Bracebridge tired of accommodating his medical needs.

Mr. Richards filed a charge of discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") on or about March 28, 2003. See Complaint at 2. The charge, a copy of which is attached hereto, named Bracebridge and James DiBiase as the only respondents.[2] Mr. Richards withdrew his complaint from the Commission and from the Equal Employment Opportunity Commission ("EEOC"), where he had cross-filed it, in order to commence this action. See id. In this action, he named Ms. Zimmerman, a Bracebridge managing partner, as a defendant, along with Mr. DiBiase and Bracebridge. See id. ¶4.

## ARGUMENT

### A. Plaintiff's Failure To Name Ms. Zimmerman As A Respondent Before The Commission Precludes Any Claim Against Her In This Action.

Defendant Nancy Zimmerman was not named as a respondent in the MCAD charge, nor was she otherwise referred to, by name, title or otherwise, in

---

[2] Although this motion is brought under Fed. R. Civ. P. 12, and accordingly the materials that the Court may review outside the Complaint are limited, the Court nevertheless may consider "documents the authenticity of which are [sic] not disputed by the parties; . . . official public records; . . . documents central to plaintiff's claim; or . . . documents sufficiently referred to in the complaint." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)) (permitting consideration on Rule 12(b)(6) motion of settlement agreement that was neither appended to nor incorporated in plaintiffs' complaint); Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). The charge filed with the MCAD qualifies in at least the second and fourth categories; the charge is a public record, see 804 C.M.R. §1.04(4), and is expressly referred to in the Complaint. See also Stewart v. Kuligowska, 28 F. Supp. 2d 690, 692 (D. Mass. 1998) (Young, J.) (considering MCAD charge even though not referred to at all in federal court complaint).

the statement of particulars detailing the charge. That failure to name her is fatal to the plaintiff's claims against Ms. Zimmerman in this Court.

The established rule is that a party who is not named as a respondent in an administrative charge before the EEOC or the MCAD "is not subject to a subsequent civil action." King v. First, 46 Mass. App. Ct. 372, 374 (1999) (citing McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 504-505 (1st Cir. 1996); Chatman v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 234-35 (D. Mass. 1997) (Lindsay, J.)); see also Fink v. Printed Circuit Corp., 204 F. Supp. 2d 119 (D. Mass. 2002) (Gorton, J.). The same rule applies to claims filed with the EEOC. See, e.g., Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126 (7th Cir. 1989).

The purpose of the rule is to ensure that those accused of discrimination have notice of the claim and an opportunity to conciliate it before the agency. See, e.g., Chapin v. Univ. of Mass. at Lowell, 977 F. Supp. 72, 76 (D. Mass. 1997) (Lindsay, J.); Hayes v. Henri Bendel, Inc., 945 F. Supp. 374, 378 (D. Mass. 1996) (Stearns, J.). Indeed, MCAD regulations expressly require that all respondents be named. See 804 C.M.R. §1.10(5)(d) ("The complaint shall contain: . . . appropriate identification of . . . the person(s) alleged to have committed unlawful discriminatory acts").

To be sure, the courts have drawn certain limited exceptions to the general rule. In Chatman, for example, the Court held that if an individual's conduct is sufficiently put in issue by the body of the MCAD charge, a failure formally to name the individual as a respondent will not be fatal.[3] That

---

[3] 973 F. Supp. at 235 ("failure to name a party as a respondent in a charge filed with the MCAD does not preclude a later civil action against that party if the conduct of the party was put in issue by the charge and the party had notice of and an opportunity to conciliate the charge"). That exception arguably applies to Mr. DiBiase, who was not named as a respondent in the charge itself but is referred to several times in the statement of particulars.

6880/14208-001 BNLIB1/58286v1

exception has no application here, because Ms. Zimmerman is neither named anywhere in the charge or the supporting description, nor is any of her alleged conduct described, nor is she referred to even by title or function.  She had no notice that plaintiff intended to pursue a claim against her individually, nor any opportunity to conciliate that claim either through the MCAD or otherwise.

Further, as the Court noted in Chatman, a plaintiff who intends to pursue a claim against a respondent not named in an administrative charge bears the burden of at least alleging that the new defendant had "notice of and an opportunity to conciliate the charges against [her] at the MCAD."  973 F. Supp. at 236.  Noting that on a motion to dismiss the Court is limited "to those facts alleged in the complaint and the inferences that may reasonably be drawn from those alleged facts," and because the complaint neither alleged nor fairly implied notice or an opportunity to conciliate, the Court dismissed the claims against the unnamed individual respondents.  Id.

So here.  The plaintiff does not allege that Ms. Zimmerman had notice or an opportunity to conciliate claims against her before the MCAD or the EEOC, and dismissal accordingly is appropriate.  See also Stewart, 28 F. Supp. 2d at 692 (citing this holding of Chatman with approval and dismissing claim against individual defendant); see id. at 693 ("Failing such formal steps to ensure notice and an opportunity to participate, the complaint must allege those elements or admit reasonable inferences to that effect.").

Nothing in plaintiff's MCAD charge gives so much as a hint that he intended to assert any claim against Ms. Zimmerman, or even that he contended she played some role in the alleged discrimination.  His failure to name her as a respondent bars his claims in this Court, and they should be dismissed.

6880/14208-001 BNLIB1/58286v1

## B. Plaintiff Fails To State A Claim Against Ms. Zimmerman.

There is an independent reason to dismiss the claims against Ms. Zimmerman, which arguably would apply even if plaintiff had named her as a respondent in his administrative charge: plaintiff simply fails to allege any conduct that, if proved, would impose any liability on Ms. Zimmerman individually. The sole substantive allegation concerning her is a single sentence in Paragraph 13 of the complaint: "On information and belief, defendant Zimmerman approved the decision to terminate Mr. Richards' employment." Even if accepted, for these purposes, as true, the allegation states no claim against Ms. Zimmerman under the standards of proof that govern individual liability for discrimination under the Americans with Disabilities Act ("ADA") and Massachusetts General Laws Chapter 151B, the two statutes under which plaintiff asserts his claims. (See Complaint ¶¶17-25).

First, plaintiff fails to state a claim against Ms. Zimmerman (and against Mr. DiBiase) under the ADA, because the statute simply does not extend liability to individuals. See, e.g., Fink, 204 F. Supp. 2d at 129; Lemire v. Silva, 104 F. Supp. 2d 80, 92-93 (D. Mass. 2000) (Keeton, J.) (citing Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 744 (10th Cir. 1999); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996); EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279-82 (7th Cir. 1995); Meara v. Bennett, 27 F. Supp. 2d 288, 290 (D. Mass. 1998) (Ponsor, J.); Figueroa v. Fajardo, 1 F. Supp. 2d 117, 120 (D.P.R. 1998)).[4]

---

[4] Relatedly, the majority view is that individuals are not subject to suit under Title VII of the Civil Rights Act of 1964, although the First Circuit has not yet taken a position on the issue. See, e.g., Foley v. University Of Houston System, 355 F.3d 333, 340 n.8 (5th Cir. 2003); Akers v. Alvey, 338 F.3d 491, 500 (6th Cir. 2003); Holly D. v. Cal. Institute of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc); Preyer v. Dartmouth

Second, as to claims under Chapter 151B, the only Massachusetts appellate court decision to consider the question of individual liability did so in the context of a challenge by an employee who actively and personally harassed the plaintiff on the basis of her gender.  Beaupre v. Cliff Smith & Associates, 50 Mass. App. Ct. 480, 492 (2000); see id. at 491 n.18 (drawing support from MCAD decisions, all of which involved the active perpetrator of discriminatory conduct).  In finding that Chapter 151B imposes liability on individuals, the court relied on several sections of the statute, all of which require active misconduct by the individual in question, whether that conduct be "effecting discharge," "threatening, coercing, or interfering" with the plaintiff's rights, or "aiding and abetting."  See id. at 493-94 & n.21; Mass. Gen. L. c. 151B, §§4(4), 4(4A), 4(5).  Plaintiff does not allege any active misconduct by Ms. Zimmerman, and we are unaware of any Massachusetts decision holding that mere "approval" of a termination is sufficient to create individual liability for discrimination.

This Court has held, in a decision predating Beaupre, that acquiescence or inaction in the face of knowledge of the misconduct may be sufficient to support a claim of individual liability.  Chapin, 972 F. Supp. at 78.  In Chapin, however, there was an allegation that the individual defendant "failed to take action upon receiving reports of harassment."  Id.  There is no such allegation here.  Plaintiff does not allege that he ever complained to Ms. Zimmerman, or that she had any knowledge of Mr. Richards' injury from some other source, or knew of his asserted need for accommodation or anything else connected with

---

College, 968 F. Supp. 20, 25 (D.N.H. 1997); Frizzell v. Southwest Motor Freight, Inc., 906 F. Supp. 441 (E.D. Tenn. 1995) (collecting decisions from eight circuits). But see Serapion v. Martinez, 119 F.3d 982, 992 (1st Cir. 1997) (declining to "enter this thicket").

6880/14208-001 BNLIB1/58286v1

his alleged disability. Nor is there any allegation that Ms. Zimmerman knowingly "acquiesced" in any of the discriminatory conduct that plaintiff alleges.

Thus, regardless of whether Massachusetts law imposes individual liability only on those who actively engage in discriminatory conduct, or also those who fail to act despite knowledge of the claim, the Complaint here is deficient. It fails to state a claim against Ms. Zimmerman, and plaintiff's claims against her should be dismissed.

### C. The Claims Against Mr. DiBiase Under the Americans With Disabilities Act Should Be Dismissed.

For the same reasons explained above with respect to Ms. Zimmerman, the federal law claims against Mr. DiBiase must be dismissed because the Americans with Disabilities Act does not extend to the conduct of individuals. See cases cited supra p. 5.

### CONCLUSION

For all of the foregoing reasons, plaintiff's claims against Nancy Zimmerman, and the claims against Mr. DiBiase under the Americans With Disabilities Act, should be dismissed.

> Respectfully submitted,
>
> BRACEBRIDGE CAPITAL LLC
> JAMES DIBIASE
> NANCY ZIMMERMAN
>
> By their attorneys,
>
> /s/Mark W. Batten
> Mark W. Batten, BBO #566211
> Proskauer Rose LLP
> One International Place
> Boston, MA 02110
> (617) 526-9850

6880/14208-001 BNLIB1/58286v1

- 8 -

Dated: March 4, 2005

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's electronic filing system and by first-class mail, postage prepaid, this 4th day of March, 2005.

                                   /s/Mark W. Batten
                                   Mark W. Batten

6880/14208-001 BNLIB1/58286v1

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

| | |
|---|---|
| MCAD DOCKET NUMBER: 03BEM00829 | EEOC/HUD CHARGE NUMBER: 16CA301334 |
| FILING DATE: 03/28/03 | VIOLATION DATE: 02/28/03 |

Name of Aggrieved Person or Organization:
Eric Richards
4 Russell Road
Winchester, MA 01890
Primary Phone: (781)721-4716 ext. ____

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
Bracebridge Capital, L.L.C.
Attn: Human Resources
One Bow Street
Cambridge, MA 02138
Primary Phone: (617)349-2000 ext. ____

No. of Employees:    25+

Work Location: Cambridge, MA

Cause of Discrimination based on:
Disability, Disability.

The particulars are:
I, Eric Richards, the Complainant believe that I was discriminated against by Bracebridge Capital, L.L.C., on the basis of Disability. This is in violation of M.G.L. 151B Section 4 Paragraph 4A&5&16 and Title VII.

See Attached

CHARGE OF DISCRIMINATION | CHARGE NUMBER
--- | ---
This form is effected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form. | ☐ FEPA  ☐ EEOC

Massachusetts Commission Against Discrimination _____ and EEOC
(State or local Agency, if any)

| NAME (Indicate Mr., Ms., or Mrs.) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Eric Richards | (781) 721-4716 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 4 Russell Road | Winchester, MA 01890 | Middlesex |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NO. OF EMPLOYEES/MEMBERS | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| Bracebridge Capital, L.L.C. | 25+ | (617) 349-2000 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | |
| One Bow Street | Cambridge, MA 02138 | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)):
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ AGE  ☒ RETALIATION  ☒ OTHER (Specify) Disability

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (Month, day, year)

PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

See Attached Exhibit A.

MAR 28 2003

expires 3/13/09

I want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for meeting State and Local Requirements)
I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)
3/28/03

FORM 5  PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

## EXHIBIT A

On August 22, 2002, Eric Richards ("Richards") began employment with Bracebridge Capital LLC ("Bracebridge") as a Profit and Loss Analyst. His duties consisted of taking the previous day's data regarding mutual fund performance and creating profit and loss reports. On or about Saturday, November 16, 2002, Richards was bending over to pick-up his young daughter when he felt a sharp pain in his legs and back. Since that date, Richards has experienced substantial periods of intense pain in his legs and back, limiting his ability to walk, stand, sit, move and lift. Richards sought the care of medical professionals including neurosurgeons and orthopedic surgeons who have prescribed appropriate medical treatment for him.

On or about November 18 and/or 19th, 2002, Richards telephoned his supervisor, James DiBiasi ("DiBiasi"), the Chief Financial Officer of Bracebridge and informed DiBiasi of his condition. On or about November 25, 2002, Richards returned to work at Bracebridge, despite intense pain in his legs and back that made it extremely difficult for him to walk, drive a car and/or sit for extended periods of time. During that week, Richards requested that DiBiasi provide accommodations for his impairment. DiBiasi informed Richards that Bracebridge would provide an informal "flex-time" policy whereby Richards would be allowed to leave his desk to stretch his back, seek medical attention or go home early. DiBiasi also agreed to subsidize the cost of renting a nearby parking spot and promised to provide an air mattress. Despite Richards' impairment, Richards was able to perform the essential functions of his position.

On or about December 2, 2002, Richards went to see a neurosurgeon. Richards immediately informed DiBiasi of the results of his consultation and asked DiBiasi about the possibility of taking a medical leave. DiBiasi responded by saying that Bracebridge had no short-term leave policy. On or about December 6, 2002, the neurosurgeon arranged for the administration of treatment for Richards' conditions. Fully aware of Richards' impaired condition, on or about December 10, 2002, DiBiasi began pressuring Richards to work more hours. DiBiasi told Richards that Richards' recovery was taking longer than he had expected and that the accommodations offered to Richards (such as the informal flex-time arrangement) were creating a perception that Bracebridge was favoring Richards. This perception, said DiBiasi, was burdening the company. Responding to the fear and pressure created by DiBiasi's comments, Richards began arriving early to work, taking fewer stretch breaks and staying seated at his desk even during periods of intense pain. When Richards asked if DiBiasi wanted Richards to work while on medications such as narcotics, DiBiasi told Richards to do whatever it took to get through the day. Despite the extreme discomfort caused by his impairment and Bracebridge's refusal to provide reasonable accommodations, Richards consistently performed the essential functions of his job.

Towards the end of December 2002, DiBiasi told Richards that he would no longer be allowed to work flexible hours because the accommodation was causing co-workers to ask DiBiasi too many questions. Richards informed DiBiasi that he felt that his impairment still required accommodations. DiBiasi told Richards that he needed

Eric Richards _____

Richards to work more hours, regardless of his impairment. Afraid that DiBiasi was getting ready to terminate him, Richards told DiBiasi that he would try to work longer hours. DiBiasi told Richards that an air mattress, which had not yet been provided, would be provided as soon as possible. On or about January 2nd or 3rd, 2003, DiBiasi added additional duties to Richards' position such as dealing with swap cash flows, document resets and accruals per swap contractual documents. Even with these added duties, Richards continued to perform all of the essential functions of his job. In the month of January, pursuant to DiBiasi's request, Richards worked approximately 42 hours per week and missed no days of work until January 28, 2003. Richards' back impairment did not improve, probably as a result of Bracebridge's refusal to provide reasonable accommodations. An air mattress was eventually provided, but Richards was afraid to use it because he felt that doing so would further aggravate DiBiasi.

On or about January 23, 2003, Richards consulted with a highly regarded orthopedic spine surgeon. This surgeon advised Richards that his impairment required surgical intervention. On or about January 24, 2003, Richards informed DiBiasi of this prognosis. On or about January 28, 2003, Richards became extremely ill at work, with meningitis-like symptoms including high fever, stiff neck, headache, and extreme body aches. With DiBiasi's knowledge, Richards left work to go to the hospital. On or about January 30, 2003, Richards called DiBiasi to discuss his illness. During this conversation, DiBiasi expressed anger and disbelief regarding Richards' condition and added that he was completely dissatisfied with the rate at which Richards was recovering from his back impairment and Richards' need for accommodations. DiBiasi stated that he was thinking over Richards' employment status with Bracebridge. Richards responded that the best solution was for Bracebridge to provide reasonable accommodations.

Richards came into work on Friday, January 31, 2003, despite a high fever. On that day, Richards offered to provide DiBiasi with documentation regarding his back impairment. DiBiasi responded gruffly that it would be in Richards' best interest to do so. DiBiasi told Richards that Bracebridge required him to present a Family Medical Leave Act ("FMLA") form to his doctors. The FMLA does not apply to Richards based on his length of employment. When Richards asked why an FMLA form was needed, he was told that the form was always used by Bracebridge to get doctors' opinions and that Richards should get the form completed as soon as possible. On or about February 4, 2003, Kerri Vittimberga, Vice-President of Operations, reiterated to Richards that he should not worry about the use of the FMLA form, as everyone at Bracebridge would pull together and help him deal with his impairment. Vittimberga stated that the most important thing was for Richards to get better. On or about February 12, 2003, DiBiasi met with Richards to discuss his employment status. DiBiasi informed Richards he should be working longer hours and that the special accommodations he required placed a burden on the company. Richards responded that the excruciating pain in his back and legs would require surgery, and that he believed that some accommodation could be provided. Fearful of losing his job, Richards agreed to work longer hours. On or about February 21, 2003, Richards' neurosurgeon returned the FMLA form to Bracebridge on which the Doctor indicated, among other things, that the duration of Richards' condition was "indefinite."

Eric Richards

On February 28, 2003, Richards met in the conference room at Bracebridge with DiBiasi and another principal of the company, Julie Rafter ("Rafter"). DiBiasi and Rafter explained that the purpose of the meeting was to terminate Richards. DiBiasi explained that the reason for the termination was the overall burden to the company caused by Richards' impairment and the accommodations that he required. As an example, DiBiasi stated that Richards habitually left his desk to go stretch. DiBiasi explained that Bracebridge had already hired someone else to replace Richards who was, presumably, not impaired. Richards, who did not miss a day of work in February, believes, and therefore avers, that the deciding factor in his termination was that Bracebridge learned that his impairment might not be a temporary condition. Richards believes, and therefore avers, that there were many reasonable accommodations that Bracebridge could have, but chose not to, provide. For example, Julie Rafter, who participated in Richards' termination conference, was allowed to telecommute when she was recovering from illness.

Bracebridge failed to accommodate Richards, failed to meaningfully engage and stay engaged in a flexible, interactive process mandated by the disability discrimination law, and discriminated against Richards in violation of state and federal law including, but not limited to, M.G.L. c. 151B, §§4(4), 4(4A), 4(5) and 4(16) as well as the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq.. Furthermore, Bracebridge retaliated against Richards in violation of M.G.L. c. 149, § 185 and 29 C.F.R. § 1630.12 when, Bracebridge, by their own admission, terminated Richards because they did not want to provide him with reasonable accommodations. As a result of Bracebridge's unlawful conduct, Richards, who is expecting a new baby in September, has suffered significant financial losses, loss of future earning capacity, loss of reputation and extreme emotional distress. Richards seeks compensatory and punitive damages as well as attorneys fees.

**I HEREBY CERTIFY THAT I HAVE READ THE ABOVE STATEMENT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE**

_____  5/28/03
ERIC RICHARDS             DATE

Eric Richards

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Bracebridge Capital, L.L.C.  
Attn: Human Resources  
One Bow Street  
Cambridge, MA 02138

Person Filing Charge:   Eric Richards  
This Person (Check One):   ( ) Claims to be aggrieved  
( ) Is filing on behalf of  
Date of Alleged Violation:   02/28/03  
Place of Alleged Violation:   Cambridge,  
EEOC Charge Number:   16CA301334  
MCAD Docket Number:   03BEM00829

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY PROCESS (See Attached Information Sheet For Additional Information)

You are hereby notified that a charge of employment discrimination under
- [ ] Title VII of the Civil Rights Act of 1964
- [ ] The Age Discrimination in Employment Act of 1967 (ADEA)
- [ ] The Americans Disabilities Act (ADA)

Has been received by
- [ ] The EEOC and sent for initial processing to   MCAD  
(FEP Agency)

The Mass. Commission Against Discrimination  
(FEP) Agency and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral requirements if this is a Title VII or ADA Charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

- [X] As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's issuing a final finding and order. If the agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained on the second page of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

An Equal Pay Act Investigation (29 U.S.C 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

- [X] Enclosure: Copy of the Charge

Basis of Discrimination  
( ) Race   ( ) Color   ( ) Sex   ( ) Religion   ( ) National Origin  
( ) Age   ( ) Disability   ( ) Retaliation   ( ) Other

Circumstances of alleged violation:  
SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

EEOC Charge Number 16CA301334, EEOC Transmittal Letter to Respondent

| Date | Type Name/Title of Authorized EEOC Official | Signature |
|---|---|---|
| 4/1/2003 | Robert L. Sanders, Director | |